UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WEHR CONSTRUCTORS, INC.,                                    MOVANT

v.                                                   CASE NO. 3:08-MC-14-S

INDIANA/KENTUCKY REGIONAL                              RESPONDENT
COUNCIL OF CARPENTERS

## MEMORANDUM OPINION

This matter is before the court on the movant's motion to vacate an arbitrator's award (DN 1). The respondent has responded to the motion (DN 13) and the movant has replied (DN 15). The respondent has cross-moved to enforce the arbitrator's award (DN 14). The movant has responded to that motion (DN 15) and the respondent has replied (DN 16). For the reasons that follow, the court will deny the movant's motion to vacate the arbitrator's award and grant the respondent's cross-motion to enforce it.

BACKGROUND

This action arises from an arbitral proceeding initiated by the Respondent Indiana/Kentucky Regional Council of Carpenters ("Union") against the Movant Wehr Constructors, Inc. ("Wehr") pursuant to the East Central Kentucky Carpenter Agreement ("Lexington Agreement"). Arbitrator Lawrence M. Oberdank ("Arbitrator") found that Wehr violated the subcontracting clause of the Lexington Agreement by subcontracting to non-union drywall subcontractors on two construction projects in the Lexington, Kentucky area. Wehr claims that the Arbitrator did not have jurisdiction to resolve the dispute, and therefore his award should be invalidated under the Agreement.

Wehr is a general contractor and construction manager and a party to the Central Kentucky

Carpenter Agreement ("Louisville Agreement") effective from June 1, 2006 to May 31, 2009.  The Union is a party to five collective bargaining agreements ("CBAs") in Kentucky, including the Louisville and Lexington Agreements, each of which covers a different geographical area of the state.  The Lexington Agreement is also effective from June 1, 2006 to May 31, 2009.

Wehr CEO Dale Berry ("Berry") executed the Louisville Agreement and sent it to Union Executive Secretary/Treasurer David Tharp ("Tharp") on June 23, 2006, along with a cover letter that states in pertinent part:

> Attached you will find a signed copy of the 2006-2009 agreement from our firm with the following stipulations and conditions:
>
> 1.  That all contracts awarded to Wehr Constructors, Inc. prior to June 1, 2006 are exempt from grievances and are not bound to the terms and conditions of the agreement with the exceptions of the current wages and fringe contributions stated there-in.  Said wages will be retroactive from June 1, 2006.  ("the Stipulation")

Tharp wrote back to Berry on November 29, 2006.  In pertinent part, his letter states:

> I am in receipt of your signature to the 2006-2009 Carpenters collective bargaining agreement for the Louisville/Elizabethtown area that was settled on June 9, 2006 during our final negotiation meeting at Wehr Constructors office.
>
> As noted in Article 8.3, there is no other agreement outside of the negotiated Agreement. We are pleased to have settled this contract on June 9, 2006, and expect all signatory Employers to abide by its terms and conditions.  We have no interest in modifying the current agreement, nor do we wish to reopen negotiations at this time.

On December 7, 2006, the Union formalized a grievance against Wehr, which alleged that two Lexington-area Wehr projects violated the subcontracting clause of the Lexington Agreement, made applicable to Wehr through the Louisville Agreement's "traveling contractor's clause." Article 1.1 (c) of the Louisville Agreement states:

> Employers signatory to this Agreement hereby agree that when they perform work within the boundaries of the State of Kentucky, but outside the geographical jurisdiction of this Agreement as described herein, that the Employer will become signatory to and be bound by the terms and conditions of the [Union's CBA] applicable for the geographical area within the State of Kentucky where the work is to be performed.

In turn, Article V of the Lexington Agreement, "SUBCONTRACTING," states:

All work falling under the jurisdiction of the Union which has been mutually negotiated shall be assigned to or subcontracted to an Employer having an agreement with the Union.

At the arbitration, Wehr did not dispute that it subcontracted to non-union drywall subcontractors on the two Lexington-area projects. Instead, Wehr argued that the contracts were exempt from grievances because they were awarded to Wehr prior to June 1, 2006, in accordance with the Stipulation's controlling terms. The Union argued that the Stipulation did not control; and the Arbitrator issued his Opinion and Award in favor of the Union, granting the grievance on November 25, 2007.

Wehr filed this action to vacate the arbitration award pursuant to 9 U.S.C. §§ 10; 12, arguing that the Arbitrator exceeded his authority by ruling that the Stipulation was not an enforceable term of the parties' Agreement. This court has jurisdiction pursuant to 29 U.S.C. § 185 and 9 U.S.C. § 10.

DISCUSSION

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960). "Courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements... As long as the arbitrator's award draws its essence from the collective bargaining agreement... the award is

legitimate." *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) (internal quotation marks and citations omitted).

In this case, the court faces three inquiries in determining whether the Arbitrator acted outside his authority: 1) Did the Arbitrator act to resolve a dispute not committed to arbitration by the Agreement by ruling on the Stipulation?  If so, 2) Did Wehr waive its right to have a court as opposed to the Arbitrator determine the arbitrability of the Stipulation?  And, 3) Did the Arbitrator fail to arguably construe or apply the contract in resolving the legal dispute? *See, Michigan Family Resources, Inc. v. Service Employees Intern. Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007).

If the Arbitrator acted outside the scope of the Louisville Agreement **and** Wehr did not waive its right on the issue of arbitrability; **or,** if the Arbitrator failed to arguably construe or apply the contract in resolving the dispute, then the Arbitrator acted outside his authority and his award will be vacated.  Otherwise, the Arbitrator's award will be upheld.

At the heart of this dispute is whether the Stipulation was an enforceable term of the parties' Agreement.  Wehr argues that the Arbitrator lacked substantive jurisdiction under the Louisville Agreement to address whether the Stipulation was an enforceable term of the contract, and therefore overstepped his bounds by determining that it was not.  In support of its argument, Wehr relies on *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643 (1986) for the proposition that unless otherwise agreed to by the parties, the threshold issue of arbitrability is reserved for the courts.  In *AT&T*, the Supreme Court vacated the Seventh Circuit's judgment that a dispute over the arbitrability of the interpretation of a layoff provision in a CBA was a matter for the arbitrator, finding that the parties' agreement did not provide for the arbitrator to make that determination.  Wehr argues that like in *AT&T*, the Louisville Agreement does not provide for the arbitrability of the interpretation of the terms of the contract, and whether the Stipulation was

enforceable was a matter for the court.  Accordingly, Wehr argues that the Arbitrator's award must be vacated for lack of jurisdiction.

The Union does not appear to disagree with *AT&T* to the extent that it is relevant here, "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[1]  *AT&T* at 649.  However, the Union argues that Wehr clearly and unmistakably waived any right to have a court determine the issue of arbitrability.

Following the December 7 formalized institution of grievance proceedings, the parties complied with the Lexington Agreement's grievance procedure.  The parties met informally to try to resolve the grievance, participated in a hearing conducted by the Joint Arbitration Committee, participated in selecting the Arbitrator, and participated in a full arbitration hearing wherein they called and cross-examined witnesses and presented evidence.  The Union notes that Wehr made no objection when the grievance was referred to arbitration or when the Union requested that the Arbitrator retain jurisdiction to review any possible remedy.  *Union's Cross-Motion to Enforce Arbitrator's Award* at 2-3.

"Absent excusable ignorance of a predicate fact, a party that does not object to the arbitrator's jurisdiction during the arbitration may not later do so in court."  *Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720 (D.C. Cir. 2008).  "[A]rbitration is a matter of consent; if a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may fairly

---

[1]The Union notes, however, that the Arbitrator found jurisdiction under the Lexington Agreement, which includes "All disputes of every type and character between the parties hereto arising from the Agreement..."  *Union's Cross-Motion to Enforce Arbitrator's Award*, pp. 7-8 (citing *Opinion and Award*, pp. 5-6).

be said to have consented to the arbitration..." *Id*. at 720.  By putting the Stipulation into issue at the arbitration, Wehr thereby consented to the Arbitrator's jurisdiction over the issue and necessarily waived any right to have a court determine the initial arbitrability of the Stipulation after the fact. By virtue of its acquiescence in the matter, the Union likewise consented to the Arbitrator's determination of the issue.  Had the Arbitrator found instead that the Stipulation was not included in the Agreement, the relative positions of the parties would be switched but the analysis would remain the same.  It is axiomatic that by submitting the issue of the Stipulation to the Arbitrator, the parties consented to his determination of the issue; and they are now so bound by said determination. Wehr's argument that ripeness precluded its challenge of the Arbitrator's jurisdiction prior to the issuance of the award is unavailing.

Finally, the court must look to whether the Arbitrator's award draws its essence from the contract.  *Misco* at 36.  "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *Michigan Family Resources, Inc.* at 752 (quoting *Misco* at 38).  Here, in determining that the Stipulation was not an enforceable term of the Agreement, the Arbitrator was "arguably construing or applying" the contract.  Construing a contract necessarily entails determining what its terms are; and applying a contract means enforcing those terms.  That is exactly what the Arbitrator did in this case.  Moreover, the Arbitrator was acting within the scope of his authority in determining that the Stipulation was not enforceable.  The Arbitrator did not "change, amend, add to, or detract from" or "add to, subtract from, change or modify" any provision of the parties' contract in contravention of either the Lexington or Louisville Agreements.  With the full consent of both parties, the Arbitrator did nothing more than interpret and apply their Agreement.  Though Wehr initially attempted to foreclose the arbitration of the

grievance in this case by Stipulation, when given the opportunity to proceed before the Arbitrator, Wehr did so with full vigor and without objection - until after an unfavorable award was issued against it.

Wehr waived any right to have a court determine the issue of arbitrability of the Stipulation by consenting to the Arbitrator's jurisdiction.  The Arbitrator then fully complied with the Sixth Circuit's standards, as set forth in *Michigan Family Resources, Inc.*  Accordingly, Wehr's motion to vacate the Arbitrator's award will be denied.

## CONCLUSION

Because the court finds that the arbitrator's award was a result of the arbitrator interpreting and applying the parties' agreement, which was in his full jurisdiction to do so, the arbitrator's award will be upheld and the movant's motion to vacate the arbitrator's award will be denied.

A separate order will be entered herein this date in accordance with this opinion.